UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK TURNER,

          Plaintiff,

vs.                                    Case No. 8:08-cv-1216-T-27MSS

ADVANCED NAVIGATION &
POSITIONING CORPORATION,

          Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant Advanced Navigation & Positioning Corporation's

Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 4), to which Plaintiff Mark Turner has

responded in opposition (Dkt. 8). Upon consideration, Defendant's motion is DENIED.

### *Background*

In the instant motion to dismiss, Defendant argues that this Court lacks personal jurisdiction

due to Defendant's limited contacts with Florida. Defendant is incorporated in Delaware and has

its principal place of business and sole office in Oregon. (Dkt. 5, Davidson Aff. ¶ 2). According

to Defendant's Chief Operating Officer, George Davidson, Defendant "designs, assembles and

installs precision transponder landing systems for terrain-challenged commercial airports throughout

the world, as well as for U.S. and foreign military clients." (Davidson Aff. ¶ 3).[1]

---

[1] Plaintiff's Complaint and his Affidavit aver that Defendant also manufactures landing systems (Dkt. 2, ¶ 8; Dkt. 9, Pl. Aff., ¶ 7), while Davidson avers that subcontractors manufacture the landing systems (Davidson Aff. ¶ 3). The Court does not find this inconsistency to be a material issue for the purposes of the instant motion.

It is undisputed that Defendant has never been licensed to do business in Florida, owns no property in Florida, has no agent to accept service of process in Florida, and has no mailing address or telephone listings in Florida. (Davidson Aff. ¶ 2). Defendant has twenty-three employees, none of whom are located or reside in Florida. (Davidson Aff. ¶ 3). Defendant has performed only one contract in Florida, which was for the Federal Aviation Administration ("FAA"), not a Florida entity. (Davidson Aff. ¶ 8). Specifically, Defendant conducted a topographical survey, which required Defendant and its subcontractors "to be present in Florida for a total of approximately two weeks over the course of several months."[2] (*Id.*) The revenue of this project was $110,000.00, which was less than 1.4% of Defendant's total annual revenues at that time of $8,000,000.00. (*Id.*)

Defendant employed Plaintiff as its "Senior Vice President for International Business" between October 6, 2005 and December 31, 2007. (Dkt. 9, Pl. Aff. ¶ 6). At all times during his employment with Defendant, Plaintiff resided in Hillsborough County, Florida. (Pl. Aff. ¶ 4). Plaintiff worked exclusively from a home office in Florida during his employment, which forms the crux of Plaintiff's argument that Defendant has sufficient contacts with Florida to subject it to personal jurisdiction in this state. (Pl. Aff. ¶¶ 3-4, 9).

Specifically, Plaintiff avers that Defendant "expressed its expectation and desire" that Plaintiff work from his home office during business hours when he was not traveling. (Pl. Aff. ¶ 17). Defendant paid for Plaintiff's office furniture, equipment, and supplies, a mobile telephone with a Hillsborough County area code, internet access, and business cards with the address of Plaintiff's

---

[2] Plaintiff avers that this survey took place at approximately ten airports in Florida (Pl. Aff. ¶ 32), while Davidson avers that it involved the Tamiami Airport (Davidson ¶ 8). Because the parties do not dispute the length of time that Defendant was in Florida or the revenues of this project, this inconsistency is also not material to the instant motion.

2

home office. (Pl. Aff. ¶ 16).[3]  Plaintiff received most of his business mail at his home address. (Pl. Aff. ¶ 19).  Although Davidson avers that Defendant "did not consider, advertise, or list Turner's Florida residence as an office," Plaintiff specifically avers that his home office was listed on Defendant's marketing materials, including its website (Davidson Aff. ¶ 7; Pl. Aff. ¶ 20).

Plaintiff also avers that Defendant's Chief Executive Officer, Jeff Mains, supervised and directed Plaintiff's work by telephone and email. (Pl. Aff. ¶ 23).  Plaintiff participated in company meetings and conference calls, researched potential customers, and initiated sales calls from his home office. (Pl. Aff. ¶ 22).  Plaintiff contends that his sales efforts "conducted primarily from Florida" resulted in three multi-million dollar sales, as well as numerous sales of spare parts, which was "nearly the entire revenue of the whole corporation" during his employment. (Pl. Aff. ¶ 25).[4]

In the instant action, Plaintiff alleges that the parties had a written and oral contract providing that he would be paid a five percent commission on closed business deals valued at a minimum of one million dollars and that Plaintiff would receive business expenses of up to $5,000 per month. (Dkt. 2, Comp., ¶¶ 26, 31-32).  Plaintiff alleges that Defendant breached these terms by failing to pay commissions on the three deals that Plaintiff closed and failing to reimburse Plaintiff for business expenses. (Comp., ¶¶ 27, 33).  Plaintiff brings claims for breach of written and oral contract with treble damages (Counts I, II, III), unjust enrichment (Count IV), and an accounting (Count V).

---

[3] Although Davidson avers that Plaintiff was provided a company mobile phone with a (541) area code. (Davidson Aff. ¶ 7), Defendant does not specifically dispute that Plaintiff had a company mobile phone with an (813) area code. *See Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

[4] Plaintiff's affidavit contains a typographical error, stating that there were "three (2) multi-million dollar international sales." (Pl. Aff. ¶ 25).  As three sales are also identified in Paragraph 19 of the Complaint, the Court construes the number of sales to be three, rather than two.

## *Standard*

A federal district court sitting in diversity employs a two-part analysis to determine whether it has personal jurisdiction over a nonresident defendant. First, the court determines whether the exercise of jurisdiction is appropriate under Florida's long-arm statute, which is strictly construed. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996). Second, the court examines whether exercising jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment, "which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Sloss Indus. Corp.*, 488 F.3d at 925.

A plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over a defendant, sufficient to withstand a motion for directed verdict. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006). The facts alleged in the complaint are accepted as true, to the extent that they are not controverted by a defendant. *Id.* If the defendant disputes the allegations in the complaint with supporting affidavits, then the burden shifts back to the plaintiff to counter with affidavits or "other competent proof" to support its jurisdictional allegations. *Meir ex rel. Meir v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Where the plaintiff's evidence and defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff. *Stubbs,* 447 F.3d at 1360.

## *Discussion*

In the instant motion to dismiss, Defendant contends that it has insufficient contacts with

Florida to establish general or specific jurisdiction under the Florida long-arm statute and that any exercise of jurisdiction would not comport with the Due Process Clause. These arguments are addressed in turn.

## 1. *Florida's Long-Arm Statute*

Plaintiff argues that there are three possible bases for the exercise of specific jurisdiction under the Florida long-arm statute: Defendant's operation of a business in the state, Fla. Stat. § 48.193(1)(a); Defendant's commission of a tort in the state, Fla. Stat. § 48.193(b); and Defendant's breach of a contract in the state, Fla. Stat. § 48.193(1)(g). Plaintiff also argues that general jurisdiction is appropriate under Fla. Stat. § 48.193(2). Because the Court finds specific jurisdiction exists under § 48.193(1)(g), the parties' arguments pertaining to the remaining provisions are not addressed.

Specific jurisdiction exists under §48.193(1)(g) for a cause of action arising from a defendant "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(g). Pursuant to this subsection, "there must exist a duty to perform an act *in Florida*; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1218-19 (11th Cir. 1999) (emphasis in original).

The Complaint alleges that the parties had a written and oral contract providing that Defendant would pay Plaintiff a five percent commission on closed business deals valued at a minimum of one million dollars and that Plaintiff would receive business expenses of up to $5,000 per month. In addition, Plaintiff avers that payment was always made to him in Florida through direct deposits into his checking account with Bank of America, which was located in Hillsborough

County, Florida. (Pl. Aff. ¶ 35, Exh. F).

Under Florida law, it is well-established that "[t]he legal presumption that a debt is to be paid at the creditor's place of business is sufficient to satisfy the language of Florida's long-arm provision that refers to contractual acts required to be performed in Florida." *Laser Elec. Contractors, Inc. v. C.E.S. Indus., Inc.*, 573 So. 2d 1081, 1083 (Fla. 4th DCA 1991) (internal quotations omitted); *see also Aspsoft, Inc. v. WebClay*, 983 So. 2d 761, 766 (Fla. 5th DCA 2008); *Pac. Coral Shrimp v. Bryant Fisheries*, 844 F. Supp. 1546, 1548-49 (S.D. Fla. 1994). Moreover, the place of payment need not be explicit in the parties' agreement. *See Unger v. Publisher Entry Serv., Inc.*, 513 So. 2d 674, 676 (Fla. 5th DCA 1987).

Because Defendant routinely paid Plaintiff in Florida and Plaintiff alleges that the contracts mandating these payments were breached, there is a sufficient basis for the exercise of personal jurisdiction under § 48.193(1)(g) of the Florida long-arm statute pursuant to the foregoing authority.[5]

## 2.    *Due Process*

Having established a sufficient basis for long-arm jurisdiction, Plaintiff must also demonstrate that the exercise of jurisdiction over Defendant comports with the Due Process Clause. Specifically, Plaintiff must demonstrate that Defendant has the requisite minimum contacts with Florida and that the exercise of jurisdiction would comport with "fair play and substantial justice." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 474-75, 485-86 (1985); *Asahi Metal Indus. Co. Ltd. v. Superior Court,* 480 U.S. 102, 108-09, 113 (1987).

---

[5] The cases cited by Defendant are distinguishable as they involve contracts for performance of services rather than performance by payment. *See e.g., Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgm't, Inc.*, 726 So. 2d 313, 314 (Fla. 4th DCA 1998) (noting that defendant "could have delivered the lists to Travel by placing them in the mail in Connecticut").

6

a.     *Minimum contacts*

As this case involves the exercise of specific jurisdiction, to demonstrate the requisite minimum contacts with Florida, Defendant's contact with Florida must: (1) be related to Plaintiff's cause of action or have given rise to it; (2) involve some act by which Defendant purposefully availed itself of the privilege of conducting activities within Florida; and (3) be such that Defendant should have reasonably anticipated being haled into court here. *See Sloss Indus. Corp.*, 488 F.3d at 925; *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005). The Court must examine the "quality and nature" of Defendant's activity in Florida. *Cable/Home Comm. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 858 (11th Cir. 1990). Although a "significant single act or meeting in the forum state" may be sufficient, *id.*, the contacts must be not be merely "random, fortuitous, or attenuated" or the result of "the unilateral activity of another party or a third person," *Burger King Corp.*, 471 U.S. at 475 (internal quotations omitted). The fundamental question is whether the defendant had "fair warning" that its activity would render it liable to suit in a remote forum. *See Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993).

In arguing that it has insufficient contacts with Florida, Defendant argues that it has a limited business presence in Florida and that any contact it had with Florida by virtue of Plaintiff's office here was the result of Plaintiff's "unilateral" and "fortuitous" decision to remain in Florida. This Court disagrees.

Defendant is correct that its contacts in Florida, other than those with Plaintiff, are relatively limited. Defendant currently has no physical presence in Florida, through property, employees, or agents. Defendant has engaged in minimal business activity in Florida, including the FAA surveying project and the use of a "few" Florida subcontractors to manufacture its systems, and it has never

7

sold a system to a Florida customer. (Davidson Aff. ¶¶ 3, 6). On the other hand, Plaintiff avers that he contracted with a Florida company to serve as agent for the sale of a landing system to the Brazilian Air Force, that he held discussions with representatives of a Tampa, Florida airport, and that Defendant received short-term loans from a Florida venture capital firm. (Pl. Aff. ¶¶ 26, 31, 33).

The Court need not determine, however, whether these activities constitute purposeful availment of the privilege of doing business in Florida, as Defendant's establishment of Plaintiff's home office in Florida is sufficient. Plaintiff worked "exclusively" from his home office in Hillsborough County, which Defendant furnished, supplied, and listed on its website and other marketing materials.[6] Plaintiff avers that Defendant "expressed its expectation and desire" that Plaintiff work from his home office during business hours when he was not traveling. (Pl. Aff. ¶ 17). Plaintiff used business cards with the address of his Florida office and a mobile telephone with a Hillsborough County area code, and he received most business mail at his home office. Plaintiff participated in company meetings and conference calls, researched potential customers, and initiated sales calls from his home office. Plaintiff avers that his sales efforts "conducted primarily from Florida" resulted in three multi-million dollar sales, as well as numerous sales of spare parts, which was "nearly the entire revenue of the whole corporation" during his employment. (Pl. Aff. ¶ 25).

_____

[6] Although Defendant contends that it "did not consider, advertise, or list Turner's Florida residence as an office" (Davidson Aff. ¶ 7), this inconsistency is resolved in favor of Plaintiff without an evidentiary hearing. *See S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (noting that, in challenges to personal jurisdiction, factual inconsistencies are resolved in favor of the plaintiff). This Court notes that one unpublished Eleventh Circuit decision has applied the Florida standard, which requires a limited evidentiary hearing when there are irreconcilable affidavits. *See Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005); *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 503 (Fla. 1989). However, this application of Florida law is contradicted in published prior panel precedent. *See Chalwest (Holdings) Ltd. v. Ellis*, 924 F.2d 1011, 1013-14 (11th Cir. 1991) (explaining that plaintiff's proof may be limited to written material and "[i]f the issue is contested and there is conflicting evidence, the court must either deny the motion and postpone any further jurisdictional challenge until trial, or hold a preliminary evidentiary hearing."). Neither party has requested a hearing, and the Court declines to hold one pursuant to the foregoing authority. In addition, the remaining undisputed facts pertaining to the parties' activities in Florida are sufficient to confer personal jurisdiction over Defendant.

Based on the foregoing, Defendant's contacts with Florida were not random, attenuated, or fortuitous, nor were they the result of unilateral activity on the part of Plaintiff. Defendant "deliberately reached out beyond" Oregon and negotiated Plaintiff's employment in Florida. *Burger King*, 471 U.S. at 480. Indeed, Plaintiff initially rejected Defendant's offer of employment because Defendant required that he relocate to Oregon. (Pl. Aff. ¶ 12). Mains then contacted Plaintiff and made a new offer of employment, including an offer to establish an office in Florida, which Plaintiff accepted. (Pl. Aff. ¶ 13). Plaintiff remained in this position for over two years, during which time he generated "nearly the entire revenue" of Defendant.

Thus, in contrast to the cases on which Defendant relies,[7] the "quality and nature" of Defendant's relationship with a Florida resident was deliberate, fully negotiated, involved continuing obligations, and produced long-term benefit to Defendant. *See id.* at 479-80. In addition, Defendant's failure to make the allegedly contractually-required payments to Plaintiff resulted in foreseeable injuries to Plaintiff in Florida. *See id.* at 480. Under these circumstances, it is apparent that Defendant purposefully availed itself of the privilege of conducting business in Florida. *See Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 155-56 (5th Cir. 1974) (finding "affirmative, purposeful decision to enter Colorado" by defendant's contracting with the Colorado plaintiff for two years to test ore sent from Alabama); *see also Ruiz de Molina v. Merritt & Furman*

_____

[7] In the primary case on which Defendant relies, *Pennebacker v. Wayfarer Ketch Corporation,* the non-resident New York defendant's only connection to Pennsylvania was that plaintiff lived in Pennsylvania when *not* working for Defendant. *Pennebacker v. Wayfarer Ketch Corp.*, 777 F. Supp. 1217, 1221-22 (E.D. Pa. 1991); *see also Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1113-14 (11th Cir. 1990) (although agent for non-resident defendant traveled to Florida twice, the visits were brief and non-essential, had no long-term connection to Florida, and were brought about by a third party). Although not cited by Defendant for this proposition, this Court distinguishes another Eleventh Circuit case in which personal jurisdiction was found to be lacking, as it involved a non-resident defendant's contract for one-time services with a Florida corporation, rather than a continuing obligation, as here. *See Future Tech. Today, Inc.*, 218 F.3d at 1251.

*Ins. Agency, Inc.*, 207 F.3d 1351, 1357 (11th Cir. 2000) (noting that defendants chose to do business with an Alabama resident and expected to and did receive a benefit from that activity). As a result, it is presumptively reasonable for Defendant to be called to account in Florida for the injuries arising from the termination of its employment relationship with Plaintiff. *Burger King*, 471 U.S. at 480; *see also Sculptchair, Inc.*, 94 F.3d at 631.

b.      *Fair play and substantial justice*

As Plaintiff has demonstrated the requisite minimum contacts, the Court must also evaluate whether the exercise of jurisdiction over Defendant would satisfy "traditional notions of fair play and substantial justice." *Sloss Indus. Corp.*, 488 F.3d at 925. In making this determination, the Court evaluates: (1) the burden on Defendant; (2) Florida's interest in adjudicating the dispute; (3) Plaintiff's interest in obtaining convenient and effective relief; (4) the interests of the judicial systems in Florida and Oregon in obtaining the most effective resolution; and (5) the shared interests of Florida and Oregon in furthering fundamental substantive policies. *See id.* at 933 (citing *Asahi Metal Indus. Co. Ltd.,* 480 U.S. at 113-15).

Although it is inconvenient for Defendant to litigate this suit in this forum, Defendant has not demonstrated an undue burden, especially as Defendant uses modern communications to employ individuals around the country. *See Stubbs*, 447 F.3d at 1364 (noting that "modern methods of transportation and communication have significantly alleviated any burden"). Florida has a significant interest in adjudicating a dispute involving a foreign corporation's alleged failure to pay a Florida resident, and Plaintiff has a corresponding interest in obtaining convenient and effective relief in Florida, his home state. *Burger King*, 471 U.S. at 473 (noting that "a State generally has a 'manifest interest' in providing residents with a convenient forum for redressing injuries inflicted

10

by out-of-state actors"); *Meier*, 288 F.3d at 1276 (noting the disparity between Plaintiffs' salary and Defendant's advertising expenditures). Finally, the Court does not perceive any frustration to efficiency or furtherance of state policies should this case remain in the instant forum. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259-60 (11th Cir. 1996).

As a result, the exercise of jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.

### *Conclusion*

Based on the foregoing, Plaintiff has demonstrated a proper basis for the exercise of personal jurisdiction over Defendant in Florida, which comports with the Due Process Clause of the Fourteenth Amendment. Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 4) is **DENIED**.

**DONE AND ORDERED** in chambers this _24th_ day of September, 2008.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

11